## A10A0927. FORSTER v. STATE FARM FIRE & CASUALTY COMPANY.
### (704 SE2d 204)

ADAMS, Judge.

Robert A. Forster, M.D., appeals the trial court's grant of summary judgment to State Farm Fire & Casualty Company in a declaratory judgment action filed by the insurer to determine its rights and obligations in relation to a lawsuit filed against Forster by John and Andrea Goldberg. The Goldbergs' suit seeks damages in connection with Forster's renovation and sale of a house.

"[W]e review the trial court's grant of summary judgment to determine whether the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Punctuation and footnote omitted.)

---

*Tookes v. Murray*, 297 Ga. App. 765 (678 SE2d 209) (2009). Moreover "[o]n appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citations omitted.) *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

So viewed, the record shows that on or about December 15, 2005, Forster purchased the house at issue, which he planned to renovate and then to either rent, sell or occupy. At the time of purchase, he consulted his State Farm agent about the insurance he would need in connection with these plans. At the agent's recommendation, he purchased a Rental Dwelling Policy ("RDP"), which would be linked to Forster's pre-existing Personal Liability Umbrella Policy ("PLUP") also held through State Farm. A short time after Forster purchased the house, the Goldbergs expressed an interest in buying it, and on February 19, 2006, the parties entered into a "New Construction Purchase and Sale Agreement" under which Forster agreed to renovate the house and the Goldbergs agreed to buy it.

The Agreement set a purchase price of $706,114, but the Goldbergs agreed to pay an additional $38,000 for numerous upgrades and repairs throughout the house. In turn, Forster agreed that the property would be completed in accordance with the Agreement; he also provided an express one-year warranty "against all defects in labor and materials (normal wear and tear excepted)." Forster did no work on the house himself but instead hired Mitchell Galloway to perform the renovations. The Goldbergs assert that as the closing neared, they prepared detailed punch lists of items that awaited repairs. They contend that when the closing took place April 21, 2006, a number of these items were still outstanding, and they understood that the repairs on the punch lists would be timely completed afterward. But Forster asserts that the Goldbergs voiced no complaints about the renovations at the time of the closing.

Subsequently, the Goldbergs filed suit against Forster, Galloway, and Residential Environments, LLC, which corporation the Goldbergs contend, but Forster denies, was hired to work on the house. The Goldbergs alleged that many of the repairs and renovations were never completed or were completed improperly, and they were required to expend additional monies to complete the house. They asserted claims against Forster for breach of contract and breach of warranty. The complaint, as amended, also asserted claims of third-party beneficiary and negligent construction against Galloway and Residential. It sought attorney fees under OCGA § 13-6-11 against all the defendants. State Farm filed this declaratory judgment action to determine whether either of Forster's two State Farm policies provided coverage for the Goldbergs' claims.

An insured claiming an insurance benefit "has the burden of proving that a claim falls within the coverage of the policy." (Citation omitted.) *Ga. Farm &c. Ins. Co. v. Hall County*, 262 Ga. App. 810, 812 (1) (586 SE2d 715) (2003). See also *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 420 (1) (454 SE2d 616) (1995). Accordingly,

> [a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. . . . If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. However, . . . where the complaint . . . does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.

(Citations omitted.) *City of Atlanta v. St. Paul Fire &c. Ins. Co.*, 231 Ga. App. 206, 207 (498 SE2d 782) (1998).

In this case, the RDP, the primary policy covering the house, states in pertinent part:

> SECTION II — LIABILITY COVERAGES
> COVERAGE L — BUSINESS LIABILITY
> If a claim is made or a suit is brought against an insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an *occurrence*, and which arises from the ownership, maintenance or use of the insured premises, we will:
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
> 2. provide a defense at our expense by counsel of our choice. . . .

(Emphasis supplied.) The RDP defines "occurrence," when used in this section of the policy, to mean "an *accident*, including exposure to conditions, which results in" bodily injury, property damage or personal injury. (Emphasis supplied.)

Forster's other policy, the PLUP, provides that if Forster is "legally obligated to pay damages for a *loss*, [State Farm] will pay [his] net loss. . . . (Emphasis supplied.) "Loss" is defined under the PLUP to mean "an *accident*, that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions." (Emphasis supplied.) Thus, coverage under

YALE LAW LIBRARY

92

each of these policies is triggered by an "accident" which results in property damage or personal injury, but the term "accident" is not defined under either policy.

Georgia law, however, provides that the term " '[a]ccident' means an event which takes place without one's foresight or expectation or design." OCGA § 1-3-3 (2). See also *City of Atlanta*, 231 Ga. App. at 208 (1). However, when used in an insurance policy, "accident" has a further meaning limited by the occurrence or event as to causation of injury or damage; "an accident is an unexpected happening rather than one occurring through intention or design." (Citations and punctuation omitted.) *Custom Planning &c. v. American Nat. Fire Ins. Co.*, 270 Ga. App. 8, 9-10 (1) (606 SE2d 39) (2004). In other words, where an act is intentional, it does not constitute an "accident" under the terms of Forster's insurance policies.

Applying this definition, this Court has held, for example, that an insurance policy with similar language to the policies in this case provide no coverage for breach of contract, fraud, or breach of warranty from the intentional failure to disclose information. *Custom Planning*, 270 Ga. App. at 10 (1). Moreover, this Court has found that construction defects that constitute a breach of contract are not covered by such a policy. See *Hathaway Dev. Co. v. American Empire &c. Ins. Co.*, 301 Ga. App. 65, 69 (2) (686 SE2d 855) (2009). No coverage exists, therefore, for damage to the construction project itself, and State Farm has no duty to provide coverage for the Goldbergs' claims for breach of contract or breach of warranty to the extent that they seek such damages. See *Custom Planning*, 270 Ga. App. at 10 (1) (where the faulty workmanship causes damage only to the work itself, no "occurrence" existed under the terms of policy with similar language).

But this Court has held that "negligently performed faulty workmanship that damages other property may constitute an 'occurrence' under [the] policy," which would be covered. *Hathaway Dev. Co.*, 301 Ga. App. at 69 (2) citing *SawHorse, Inc. v. Southern Guaranty Ins. Co. of Ga.*, 269 Ga. App. 493, 498-499 (2) (b) (604 SE2d 541) (2004). See also *Custom Planning*, 270 Ga. App. at 10 (1). Accordingly, State Farm would have the obligation to provide coverage to the extent that any defects in the contractual work incidentally damaged other property not included in the construction project. See *SawHorse*, 269 Ga. App. at 488-499 (2) (b) (similar "occurrence" language in policy did not bar coverage for damage to first floor of house caused by faulty workmanship under construction agreement for second-floor addition).

Here, the Goldbergs' complaint alleges claims against Forster for

breach of contract, breach of warranty and attorney fees,[1] and it seeks damages for a laundry list of "deficiencies and defects" in the construction of the house. It is unclear from the record, however, which of these claimed damages relate strictly to the work contemplated by the parties' Agreement and which might relate to other property. Thus, we cannot determine as a matter of law that State Farm has no potential responsibility to provide coverage on at least some of the Goldbergs' claims. Accordingly, we affirm the trial court's grant of summary judgment to State Farm with regard to any construction defects that constitute breach of contract or breach of warranty, but we reverse the grant of summary judgment as it relates to any claim for damages to other property.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

### DECIDED NOVEMBER 24, 2010.

*Gray, King, Chamberlin & Martineau, William E. Gray II, Sarah G. Adle*, for appellant.

*Swift, Currie, McGhee & Hiers, Maren R. Cave*, for appellee.

---

[1] At the hearing on the motion for summary judgment, the Goldbergs' lawyer argued that their claims contained a "negligent construction component" and put Forster on notice that "the Goldbergs [would be] seeking damages to their house independent of . . . their contractual claim" in the parties' planned arbitration proceeding. We expressly do not address any potential claims that may or may not be asserted in the parties' arbitration proceeding, as those claims are not before us.